STATE OF NEBRASKA, APPELLEE, V. VERDON SCOTT, APPELLANT.

403 N.W.2d 351

Filed April 3, 1987.   No. 85-797.

Frank Shoemaker, for appellant.

Robert M. Spire, Attorney General, and Dale D. Brodkey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant-appellant, VerDon Scott, was charged by information in Hitchcock County, Nebraska, and convicted of two counts of theft in violation of Neb. Rev. Stat. § 28-512(2) (Reissue 1985). The violations alleged in the amended information were that defendant

> on or about the 18th day of July, 1981 [November 15, 1981, in the second count], . . . did . . . obtain property of Rickel, Inc., a Kansas Corporation, by deception, to-wit: $1,236.70 [$1,141.88, in the second count], by intentionally preventing the said Rickel, Inc., from acquiring information regarding the transfer of grain in which Rickel, Inc., shared a pecuniary interest, thereby affecting its judgment of a transaction involving the performance of an agreement for the purchase and sale of a certain leasehold estate and grain facilities . . . .

After jury trial, defendant was convicted of each count and sentenced to 3 years' probation with certain conditions, including 90 days' confinement in the Hitchcock County jail and "restitution of the fruits of his [defendant's] crime, which shall include thirty-seven and one-half percent (37½%) of the fair market value of the grain involved in the two counts herein . . . ." Defendant timely appealed to this court.

Defendant's assignments of error may be consolidated for the purpose of this opinion into four: (1) That the trial court erred in failing to hold that Neb. Rev. Stat. §§ 28-510 and 28-512 (Reissue 1985) are unconstitutionally vague; (2) That the court erred in failing to provide defendant a preliminary hearing on the amended charges on which he was tried (theft by deception), although affording defendant a preliminary hearing on the original charges against him (theft by taking); (3) That the trial court erred in failing to dismiss the case against defendant because the State failed to prove the venue of the crime; and (4) That the court erred in failing to properly instruct the jury. We reverse and remand for a new trial because of the court's instructions.

Defendant first contends that §§ 28-510 and 28-512 are unconstitutionally vague and that, therefore, defendant's conviction cannot stand. In *State v. Sailors*, 217 Neb. 693, 352

N.W.2d 860 (1984), we held § 28-512(1) to be constitutional, and much of the reasoning of that case can be applied to the consideration of the constitutionality of § 28-512(2). Section 28-510 states:

> Conduct denominated theft in sections 28-509 to 28-518 constitutes a single offense embracing the separated offenses heretofore known as larceny, embezzlement, false pretense, extortion, blackmail, fraudulent conversion, receiving stolen property, and the like. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under sections 28-509 to 28-518, notwithstanding the specification of a different manner in the indictment or information, subject only to the power of the court to insure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

Section 28-512 states in pertinent part:

> A person commits theft if he obtains property of another by deception. A person deceives if he intentionally:
>
> . . . .
>
> (2) Prevents another from acquiring information which would affect his judgment of a transaction . . . .

Defendant specifically contends that §§ 28-510 and 28-512 are unconstitutionally vague and deprive the defendant of due process of law in violation of Neb. Const. art. I, § 3, which provides: "No person shall be deprived of life, liberty, or property, without due process of law."

Regarding § 28-510, defendant argues that the statute allows the county court to assume prosecutorial functions by allowing the court to determine at the preliminary hearing which of the five crimes consolidated in § 28-510 were committed by the defendant. Such a result, defendant argues, prevents the defendant from examining the State's witnesses as to essential elements of the crime for which he is charged because the defendant has no knowledge of the crime he is charged with until after the preliminary hearing.

The defendant's argument that § 28-510 is unconstitutional

appears to be that he was not put on notice of which type of theft he was being charged with until after the preliminary hearing, that he was therefore deprived of the opportunity to cross-examine witnesses concerning the essential elements of the crime defendant was ultimately charged with, and that he was unable to prepare his defense. Defendant's attack is based on his allegation that in the criminal procedure used in his case he was not able to cross-examine the witnesses as to the specific charges against him. The alleged constitutional issue is based on lack of notice. With regard to § 28-510, that statute is the consolidation statute only. It does not set out the elements of any specific crime, but only groups conduct of a certain type in a single offense to be known as "theft."

Defendant's challenge to § 28-510 is directed to the conduct of the proceedings against him at the preliminary hearing level—not at the level of the proceedings in the district court. Section 28-510 provides that accusation of theft may be supported by evidence supporting any manner of theft, as described in Neb. Rev. Stat. §§ 28-509 to 28-518 (Reissue 1985), even though a different manner was specified *in the indictment or information.* We are not faced with the question of the effect of § 28-510 as it applies to proceedings in the district court, but only as to the sufficiency of the preliminary hearing afforded defendant in this case.

Neb. Rev. Stat. § 29-1607 (Reissue 1985) provides in part that "[n]o information shall be filed against any person for any offense until such person shall have had a preliminary examination therefor, as provided by law, unless such person shall waive his or her right to such examination . . . ." In the case at bar, defendant contends he was afforded a preliminary hearing on the charges of theft by taking in violation of § 28-511, but not on the charges of theft by deception in violation of § 28-512(2).

The State's answer to this allegation is that under our criminal statutes in effect at the time of this incident "theft" is a single offense and that a preliminary hearing on theft in one form is sufficient to bind a defendant over to the district court for trial on theft performed in a different manner. We agree.

The function of a preliminary hearing is to determine if it

appears a crime has been committed and that "there is probable cause to believe that the person charged has committed the offense." Neb. Rev. Stat. § 29-506 (Reissue 1985). The preliminary hearing is in no sense a trial as to the guilt or innocence of the person charged. *Delay v. Brainard*, 182 Neb. 509, 156 N.W.2d 14 (1968).

In the case before us, defendant argues only the lack of notice to him. Defendant was bound over for trial on theft by deception on September 12, 1984. Defendant's trial began on June 10, 1985. Defendant had notice of the specific charges on which he was tried. Section 28-510 is not unconstitutional as applied to defendant in this case.

The defendant argues that § 28-512 is unconstitutionally vague because it failed to give the defendant fair notice that his conduct was forbidden by the statute. Defendant claims that the statute failed to inform defendant that his conduct concerning the failure to record the two loads of grain sold for cash would be forbidden by the statute.

With regard to defendant's attack on the constitutionality of § 28-512(2), defendant contends that the statute is so vague that "it failed to give him fair notice that his contemplated conduct was forbidden by the Statute . . . ." Brief for Appellant at 17-18.

We held in *State v. Copple,* 224 Neb. 672, 684, 401 N.W.2d 141, 151 (1987), quoting from *State v. Neal,* 187 Neb. 413, 191 N.W.2d 458 (1971):

> "In order to meet constitutional standards of due process, a penal statute must be sufficiently clear so that a person of ordinary intelligence has fair notice of what exactly is forbidden conduct under the act. . . . [I]n construing a penal statute this court will give it an interpretation which meets constitutional requirements if it can reasonably be done. . . . A statute is presumed to be constitutional and unconstitutionality must be clearly established before this court is authorized to declare it void."

We further stated in *Copple*, quoting from *State v. Sailors*, 217 Neb. 693, 352 N.W.2d 860 (1984):

> The test for determining whether a statute is vague is whether it forbids or requires the doing of an act in terms so vague that men of common intelligence must

necessarily guess at its meaning and differ as to its application. . . . A statute will not be deemed vague if it uses ordinary terms which find adequate interpretation in common usage and understanding. . . . In determining whether a statute is vague and therefore does not give a defendant adequate notice that his conduct is proscribed, the statute must be examined in light of the conduct with which the defendant is charged. . . .

. . . The prohibition against vagueness does not invalidate a statute simply because it could have been drafted with greater precision. The test is whether the defendant could reasonably understand that his conduct was proscribed by the statute.

*State v. Copple, supra* at 684, 401 N.W.2d at 151.

Section 28-512(2) provides that a person commits theft by deception if he obtains property of another by deception and intentionally "[p]revents another from acquiring information which would affect his judgment of a transaction." As was the case with § 28-511(1), *State v. Copple, supra*, the statute in question in this case uses words in common usage, capable of being understood by persons of ordinary intelligence. Defendant knew that Rickel was entitled to receive a portion of defendant's net profit before taxes. Necessarily, defendant knew that Rickel had to have truthful information in order for Rickel to accurately determine what amount of money was due. By reading § 28-512(2) defendant was informed that it was theft, and unlawful, to prevent Rickel from acquiring truthful information. Defendant did not place the amount representing two sales on his daily position records, and it is clear that a reading of the statute forbids such conduct. It is from the daily position records that the amount of the bond guarantee expense due Rickel under the contract was determined. The defendant knew that his failure to record the cash transactions would prevent Rickel from knowing the full extent of defendant's earnings and would therefore affect Rickel's judgment concerning what defendant owed Rickel in bond guarantee expense. If the defendant intended to prevent Rickel from acquiring information about the two grain sales for cash, then § 28-512(2) provided adequate and clear notice that the

defendant's conduct was forbidden as a criminal act. The question whether the defendant had the required criminal intent is a fact question for the jury. *State v. Copple, supra*. Section 28-512(2) is not vague and is constitutional.

Defendant also assigns as error the failure of the trial court to dismiss the case against him because the State failed to establish venue, a jurisdictional element of the State's proof. Defendant relies on *State v. Liberator*, 197 Neb. 857, 858, 251 N.W.2d 709, 710 (1977), in which this court held:

> " 'The venue of an offense may be proven like any other fact in a criminal case. It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient.' . . ."

See *State v. Laflin*, 201 Neb. 824, 272 N.W.2d 376 (1978).

Defendant asserts that the town of Beverly (where the alleged theft by deception occurred) is "unincorporated, . . . appears on no maps, cannot be sued, has no boundaries, and its location cannot be inferred without evidence." Brief for Appellant at 11. The defendant argues that the State did not produce any evidence which would establish that the theft by deception was committed in Hitchcock County, Nebraska.

A review of the record shows that while the State did fail to directly prove this fact, the State did provide evidence that the crimes occurred in Hitchcock County. It was clearly established that the two purchases of grain by LeRoy Peterson in 1981 took place at the Beverly grain elevator. It was also established that the defendant purchased the grain elevator from Rickel and that the terms of the purchase were set out in a contract of sale. Exhibit 5, the contract of sale between Rickel and the defendant, was admitted into evidence at trial. The contract includes the following language:

> THIS CONTRACT made and entered into this 6th day of June, 1977, by and between Rickel, Inc., a Kansas corporation, herein referred to as "Seller", and VerDon Scott, herein referred to as "Buyer,"
> WITNESSETH:
> 1. That for the consideration hereinafter specified,

> Seller hereby sells and agrees to assign and convey to Buyer, the following described properties in the County of Hitchcock, City of Beverly, State of Nebraska, to-wit:

The contract of sale modification agreements, attached to exhibit 5, also refer to the grain facilities "located in the County of Hitchcock, City of Beverly, State of Nebraska."

Exhibit 6, the United Pacific Insurance Company grain warehouse bond, admitted into evidence, states on page 2: "Grain Warehouse Bond-Beverly Elevator-Beverly (P.O.Culbertson), Hitchcock, Nebraska."

Indirect evidence of venue may also be inferred from the testimony of William Cemer, who identified himself as the "Hitchcock County Sheriff" and testified that he went to the Beverly elevator to speak to the defendant.

We note also that defendant's accountant, to whom defendant failed to furnish accurate information, lived in Hitchcock County. Based on the evidence which was before the jury, the proof was sufficient to show that the crime was committed in Hitchcock County. The district court correctly overruled the defendant's motion for a directed verdict because of failure of the State to establish venue.

Defendant also assigns as error that "[t]he Court erred in failing to properly instruct the jury." Such a general assignment would ordinarily not be considered as setting forth a contention that must be reviewed by this court. The error argued under the general assignment, in any event, is that the trial court failed to give an instruction submitted by defendant. Examination of the proposed instruction shows that the general idea set out in the instruction was submitted in an instruction given by the court. The trial court may refuse to give a requested instruction where the substance of the request is covered in instructions given to the jury. *State v. Thielen*, 216 Neb. 119, 342 N.W.2d 186 (1983).

We do note, however, an error not assigned in the giving of instructions. Under Neb. Ct. R. of Prac. 9D(1)d (rev. 1986), we, at our option, may note a plain error not assigned. *Tautfest v. Tautfest*, 215 Neb. 233, 338 N.W.2d 49 (1983).

By § 28-510, "[c]onduct denominated theft in sections 28-509 to 28-518 constitutes a single offense . . . ." Section 28-518 provides in part:

(1) Theft constitutes a Class III felony when the value of the thing involved is over one thousand dollars.

(2) Theft constitutes a Class IV felony when the value of the thing involved is three hundred dollars or more, but not over one thousand dollars.

(3) Theft constitutes a Class I misdemeanor when the value of the thing involved is more than one hundred dollars, but less than three hundred dollars.

(4) Theft constitutes a Class II misdemeanor when the value of the thing involved is one hundred dollars or less.

It is obvious that "the value of the thing involved" determines whether a defendant's conduct in a particular case is a felony of some degree or a misdemeanor. The value of the thing involved is an element of the charge against a defendant that must be proved beyond a reasonable doubt by the State, and the jury must make a factfinding as to that issue or the case has not been proven. The value of the thing involved in a theft case must be established by the jury.

Such an approach only reflects the concept of Neb. Rev. Stat. § 29-2026.01 (Reissue 1985), which remained operative after the enactment of §§ 28-510 et seq., and which requires that when an information charges an offense against the property of another by "larceny, embezzlement or obtaining under false pretenses, the jury, on conviction, shall ascertain and declare in its verdict the value of the property stolen, embezzled, or falsely obtained."

Without any unnecessary discussion of whether theft by deception by preventing another from acquiring information constitutes one of the crimes set out in § 29-2026.01, it is obvious that a jury must determine the amount involved when conduct is graded by the amount involved. To hold otherwise would deprive defendants of the right to jury trial on an element of the crime charged.

In *State v. Clancy*, 224 Neb. 492, 495, 398 N.W.2d 710, 713 (1987), in discussing the proof necessary under § 28-517, we stated, quoting from *State v. Hayes*, 187 Neb. 325, 190 N.W.2d 621 (1971): " 'The value of the goods in question is an essential element of the crime and like all other elements thereof the evidence must be sufficient to support a finding of the

necessary value beyond a reasonable doubt. . . .' " See, also, *State v. Redding*, 213 Neb. 887, 331 N.W.2d 811 (1983).

In the case at bar, there was evidence adduced by the State which proved, albeit indirectly, that by not placing the two cash sales in question on the daily position records, defendant had prevented Rickel from obtaining information as to transactions from which Rickel could determine it had been cheated out of $37^1/_2$ percent of the pretax profit of each of those sales.

There was also evidence adduced, however, by the same witness that if a proper amount of shrinkage in the grain had been calculated, the net profit figure could have been lowered to the point where Rickel was overpaid by defendant. Other accounting calculations showed that if defendant had reported the two cash sales, defendant would have owed an additional amount of between $100 and $150 on the bond expense due Rickel. If such evidence were believed by the jury, defendant would have been guilty of a misdemeanor. The determination of the "value of the thing involved" is absolutely essential to proving the charge against defendant, and that determination is for the jury.

We further note that defendant owed Rickel $37^1/_2$ percent of the pretax net profit to be determined, as provided by part 4 of the contract between defendant and Rickel, "by calendar quarters within sixty (60) days after the end of such quarter." Each of the sales which are the basis of the charges against defendant occurred in a different calendar quarter. No evidence was adduced as to the pretax net profits during any quarter. It is true that the contract may have been amended, for civil purposes, by the conduct of the parties to the contract, but no evidence was submitted, or instructions given to the jury, on any amendment to the contract. The effect of this change in the manner of calculating the pretax profit is not presented to us, and we do not discuss it further.

The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.